LILLIAN COATES, PETITIONER, v. WARREN HOTEL, RESPONDENT.

Decided February 14, 1940.

For the respondent, *Wilbur A. Stevens* (by *William Wann*).

For the petitioner, *Levinson & Levinson* (by *O. Ernest Gatta*).

\*    \*    \*    \*    \*    \*    \*

The petition further avers that petitioner's wages were $15 monthly, with room and board and tips averaging $10 per

week. Respondent does not deny these facts but maintains that the tips should not be included in calculating the compensation rate as they are gratuities and as such cannot be considered in such calculation.

The proofs disclose that petitioner as a result of the accident now suffers from an ununited fracture of the neck of the right femur, there being no bony union of the same, partial absorption of the head of the femur, loss of motion of leg joints, atrophy and loss of muscle tone, shortening of the leg one and three-quarters inches and complete loss of function of this member requiring the use of crutches to get about. Petitioner further complains of loss of weight since the accident, inability to sleep, leg aches all the time especially at night, pain in abdomen when moving or on sitting any length of time, must use crutches to get about at all, unable to go up and downstairs at all, extremely nervous, and inability to do any of the ordinary duties of a housekeeper. Dr. Cucinelli testifying on behalf of respondent admitted on cross-examination that petitioner's power of locomotion is practically nil. Proofs also disclose pre-existing physical conditions characterized as myocarditis, hypertension, enlarged thyroid gland, hypertrophic arthritis of the spine. These conditions were admitted by petitioner's medical witnesses to have pre-existed the accident. Petitioner on her own behalf testified she had always enjoyed good health before the accident, was never sick before and had worked as a waitress for a period of twenty years preceding the accident.

Petitioner's medical witnesses estimate that she now suffers a disability total in character and permanent in quality. Respondent's medical witnesses estimate her permanent disability as total in character of the right leg or in conjunction with the other conditions fifty per cent. of total. Petitioner's experts insist the pre-existing conditions play no part in the present disability as they mere merely anatomical and not functionally disabling. They further maintain a neurotic condition has resulted from the accident but this latter contention is denied by respondent's experts.

In brief submitted on behalf of petitioner, her counsel cites a Pennsylvania decision, *McGee* v. *Youghiogheny and Ohio*

*Coal Co.,* 182 *Atl. Rep.* 773, in which total disability was allowed in that jurisdiction for an injury similar to that involved in the case at bar. Other cases cited of New Jersey courts do not seem relevant on the present issue, except *Gorman* v. *Miner-Edgar Chemical Corp.,* 9 *N. J. Mis. R.* 180; 153. *Atl. Rep.* 271, wherein an award of seventy-five per cent. of total was allowed for an ununited fracture of the neck of the femur. However, there was an underlying Paget's disease in this case and when it was again before the Supreme Court (123 *N. J. L.* 235; 8 *Atl. Rep.* (2d) 574), it was held that part of the disability was due to the injury and part to the Paget's disease.

The instant case differs in the fact there is no underlying diseased condition that prevents the repair of the fracture and it is the injury alone that destroys the petitioner's power of locomotion, except with the aid of artificial devices and even with these she has practically none as admitted by Dr. Cucinelli. The disability of an injured workman is to be measured as it exists of itself and not as it may be modified through the use of artificial devices. *Johannsen* v. *Union Iron Works,* 97 *N. J. L.* 569; 117 *Atl. Rep.* 639. Nor should an award of compensation be limited to the member of the body involved when the injury to such member affects the efficiency of the entire body, but it is to be allowed on a total permanent basis. *Simpson* v. *New Jersey Stone and Tile Co.,* 93 *N. J. L.* 250; 107 *Atl. Rep.* 36.

In the case of *Everhart* v. *Newark Cleaning and Dyeing Co.,* 119 *N. J. L.* 108; 194 *Atl. Rep.* 294, the Court of Errors and Appeals laid down the following doctrine: "The test of liability under the Workmen's Compensation act is not the immediate impairment of earning power although compensation afforded by the statute is based upon and is measured by the workmen's earnings, but is rather the loss ensuing from personal injury which detracts from the former efficiency of the workman's body or its members in the ordinary pursuits of life." On what theory the respondent's doctors limit the percentage of disability in this case to fifty per cent. is beyond me, when it is admitted she is able to move about to only a very limited extent, and I am unable

to perceive how anyone can follow any of the ordinary pursuits of life in a practical sense without this function. A person, who by reason of injury is able to perform only the very minor acts of life, and even those under distress, and who has only a theoretical earning power, is totally and permanently disabled within the meaning of the Workmen's Compensation act.

I do not think the pathological conditions described in the medical testimony have any part in this disability. From the evidence they appear to have been latent and in no noticeable measure disabling. No human, it is common knowledge, is one hundred per cent. physically efficient. For all practical purposes the petitioner previous to the accident was one hundred per cent. efficient as we commonly know human efficiency. Her present disability I find is entirely the result of the accident.

The record discloses that after her return home from the hospital petitioner found it necessary to engage the services of a Mrs. McLaughlin, described as a practical nurse, to care for her personally and also do the general housework for a period of seventy-one days, the said Mrs. McLaughlin being paid for her sevrices $1 per day and provided with room and board at petitioner's home for which expense petitioner asks allowance. Her husband also acted in this capacity and recompense for his services is also sought. The Compensation act (R. S. 34:15-15) provides: "The employer shall furnish to the injured workman such medical surgical and other treatment, and hospital service as shall be necessary to cure and relieve the workman of the effects of the injury, and to restore the functions of the injured member or organ where such restoration is possible; * * *." A reading of this entire section implies an intention on the part of the legislature to provide an injured workman, at the expense of his employer, with such medical and allied services as have a tendency to cure and relieve him of the effects of the injury. That the legislature contemplated there might be expenses for other than medical and allied care resulting from an injury is a logical conclusion from the fact that it has enumerated the ones to be included in an award of compen-

sation, and it may therefore be inferred that it intended other elements of expense not enumerated to be excluded from a compensation award. It is my conclusion that the services of Mrs. McLaughlin and petitioner's husband do not fall within the enumerated expenses and the claim therefor will be denied.

The question as to whether or not tips received by a restaurant waitress can be included in a computation of her compensation rate has never been passed upon by the appellate courts of this state. Counsel for petitioner in urging inclusion of tips in the compensation rate cites a number of decisions of foreign jurisdictions in which it was decided tips received by such employes should be included as part of the employe's earnings. It is to be noted, however, that the wording of the statutes under which these rulings were made differs from ours in that they do not employ the word "gratuities." R. S. 34:15-37 defines wages as the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, and shall not include gratuities received from the employer or others. The question would thus seem to be a mixed one of law and fact. If the tips received in this case come under the classification of "gratuities" they must be excluded from the "money rate at which the service rendered is recompensed under the contract of hire."

It is a well known, even notorious fact, that restaurant waitresses are employed at a fixed salary payable directly by the employer, with a further understanding that tips received by them from patrons served are to be retained by the employe as further recompense for their services and there can be no doubt that the anticipation thereof influences the amount paid such employes by their employers. So fixed and general is this practice that a mere showing of an employment of this character is sufficient to raise an inference of its applicability to the contract of hire in a given case. Further strength is given this inference in the instant case by the uncontroverted testimony of the petitioner of the receipt and retention by her of tips to the amount of $10 per week. It may further be noted an allegation to this effect is contained in the petition

and is undenied in respondent's answer. When so considered by both employer and employe such tips in effect become a part of the consideration of the contract of hire and are in no sense gratuities within the contemplation of the parties to the contract. Nor are they precisely gratuities from the viewpoint of the donors, as it is a fair inference that the tipping custom influences the prices charged patrons for meals by operators of restaurants, and a higher price would be charged if the employer were obliged to pay his waitresses larger wages, which he undoubtedly would find it necessary to do were it not for the said custom. The tipping habit seems to have been adopted by the trade and public generally as a pleasant way of compensating such employes for their services.

The legislative intent apparently is to compensate injured employes on the basis of their earnings and it hardly seems in harmony with the modern liberal interpretation of the Compensation act to hold a waitress' tips to be gratuities and thus exclude from the compensation of employes of this and similar classes a major part of their earnings.

I conclude, therefore, that when, as here, the consideration of a contract of hire contemplates on the part of both employer and employe the receipt of tips to a substantial total by the latter, and the amount directly paid by the employer as wages to the employe is influenced thereby, such tips are not "gratuities" but are a part of "the money rate at which such services are recompensed under the contract of hire."

Counsel for respondent seeks to influence me against such a conclusion by calling attention to the fact that for years it has been the holding of the bureau that tips to waitresses are gratuities and were so held in a reported case by it, *Makris* v. *Top Hat Restaurant,* 16 *N. J. Mis. R.* 26; 195 *Atl. Rep.* 857. As to this contention suffice it to say that longevity alone adds no merit to an erroneous practice nor is persuasive of its continuance.

Tips in the amount of $10 per week will therefore be included in calculating petitioner's wages together with the cash payment of $15 per month and room and board at the statutory allowance of $5 per week which results in a finding of petitioner's weekly wage in the amount of $18.46.

I do, therefore, find and determine that the petitioner incurred personal injuries by accident arising out of and in course of her employment with the respondent; that said accident occurred on August 17th, 1938; that respondent had due notice or knowledge of said accident; that as a result of said accident petitioner suffered a temporary disability for a period August 17th, 1938, to and including November 17th, 1939; that as a further result of said accident petitioner sustained an ununited fracture of the neck of the right femur which totally destroys her power of locomotion and causes a total permanent disability and is entitled to four hundred weeks compensation therefor, with the further right to apply for additional compensation at the expiration of this time as provided by law (*R. S.* 34:15-12b); that the petitioner was earning a weekly wage of $18.46 at the time of the accident; that her compensation rate is $12.31 per week.

\*       \*       \*       \*       \*       \*       \*

HARRY H. UMBERGER,
*Deputy Commissioner.*