527 P.2d 767

**Roy E. TOLER, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Phoenix Newspapers, Inc., Respondent Employer,**

**The Home Insurance Company, Respondent Carrier.**

**No. I CA–IC 994.**

Court of Appeals of Arizona,
Division 1,
Department C.

Oct. 29, 1974.

Morgan & Jerome by D. A. Jerome, Phoenix, for petitioner.

William C. Wahl, Jr., Former Chief Counsel, Industrial Commission of Ariz., Phoenix, for respondent.

Don P. Crampton, P. C., by J. Stephen Mullen, Phoenix, for respondents.

OPINION

NELSON, Judge.

This is a review of an award of the Industrial Commission for a noncompensable claim. Petitioner (Toler) claims the injuries he received as the result of an unprovoked assault by a coemployee occurring during normal working hours on the premises of the respondent employer (Phoenix Newspapers, Inc.) arose out of and were received in the course of his employment, and are therefore compensable (A.R.S. §

23–1021). The hearing officer found, and the Commission affirmed, that the assault was personal in nature and consequently did not arise out of Toler's employment. We disagree and therefore set aside the award.

On July 31, 1972, Toler, who was employed by Phoenix Newspapers, Inc., as a journeyman printer and proof press operator, was working the 2:30 p. m. to 11:15 p. m. shift. Between 9:00 and 9:30 p. m. Toler and his coemployees were given a break as part of their normal routine. During this break Toler visited the employees' locker room and adjacent lavatory. He became involved in heated discourse with an inebriated coemployee, Dave DeJarnette, who accused him of having stolen a drink from a bottle of liquor that DeJarnette kept in his own locker. Toler denied that he had stolen a drink, and the substance of DeJarnette's accusation was uncorroborated before the hearing officer. The argument momentarily subsided when DeJarnette left the locker room, but it resumed when Toler, about to leave the lavatory, was once again confronted by DeJarnette and his accusations. This time, however, DeJarnette was clutching a printer's galley, a steel tray-like instrument weighing about one pound, in a threatening manner. The verbal exchange continued for another few minutes before Toler was eventually struck and injured in an ensuing assault by DeJarnette. A witness to this lavatory encounter left the room long enough to acquire additional help to separate the struggling combatants, but by the time he returned with some other coemployees the fight was over.

As a direct result of the incident, Toler sustained injuries to the left side of his head and neck. Too shaken to complete his shift, Toler sought and received permission from his supervisor to go home. Leaving the premises, he was accosted by the night foreman who requested that he make out an accident report. Toler initially declined to make out a report saying that the incident was not "job related." Upon further insistence of the night fore-man, Toler eventually recounted the facts of the confrontation explaining that he was reluctant to make the report because drinking, which was grounds for termination of employment, had been involved.

Following the assault, Toler experienced neck pains, ringing in his ears and dizziness for which he sought, received, and has continued to receive, medical treatment. Contending that the injuries flowing from the assault have severely and substantially impaired his ability to return to regular work, Toler filed his claim for benefits with the Industrial Commission.

The hearing officer found that although Toler had been assaulted by DeJarnette in the course of his employment, the assault was personal in nature and did not arise out of Toler's employment. Finding that Toler had failed to sustain his burden of proving that his injury was causally connected to his employment, the hearing officer held that Toler's claim was noncompensable. Upon requested review the Industrial Commission affirmed the hearing officer's findings and award for a noncompensable claim. Under the peculiar circumstances involved in this episode we cannot agree with the Industrial Commission's award and therefore set it aside.

The applicant has the burden of establishing by a preponderance of the evidence all the elements of his claim and his entitlement to compensation. In re Estate of Bedwell v. Industrial Commission, 104 Ariz. 443, 454 P.2d 985 (1969); Nye v. Industrial Commission, 5 Ariz.App. 165, 424 P.2d 207 (1967). In order for the injury to be compensable under the Workmen's Compensation Law, both the elements of "arising out of" and of "in the course of" employment must coexist at one and the same time. Peter Kiewit Sons' Co. v. Industrial Commission, 88 Ariz. 164, 354 P.2d 28 (1960); Goodyear Aircraft Corp. v. Gilbert, 65 Ariz. 379, 181 P.2d 624 (1947).

In the *Kiewit* case, supra, the Arizona Supreme Court observed that:

"The expressions 'arising out of' and 'in the course of' the employment are not

synonomous; but the words 'arising out of' are construed to refer to the origin or cause of the injury, and the words 'in the course of' to refer to the time, place, and circumstances under which it occurred." 88 Ariz. 164 at 168, 354 P.2d 28 at 30.

Similarly, in Sears, Roebuck & Co. v. Industrial Commission, 69 Ariz. 320, 324, 213 P.2d 672, 674 (1950), the Court said that "in the course of employment" refers to the "time, place, and circumstances under which it (the accident) occurred, i. e. coincident with the employment"; whereas the term "arising out of" employment refers to "the origin or cause of the injury." (See also Mahan v. Industrial Commission, 14 Ariz.App. 535, 484 P.2d 1064 (1971), and Washburn v. Industrial Commission, 14 Ariz.App. 479, 484 P. 248 (1971).

█ Insofar as the "in the course of" element is concerned, there is no doubt from the record that Toler has met the requisite burden of proof. His injuries occurred on the premises of Phoenix Newspapers, Inc., during regular working hours, which adequately explains the time, place, and circumstances under which the accident occurred. The hearing officer specifically found that:

\* \* \* \* \* \*

"6. Testimony adduced at the hearing clearly indicates that the aforesaid assault occurred during applicant's regular work shift; that said assault occurred while the applicant was on his evening rest break and while he had retired to the men's room to personally relieve himself; and it would therefore appear that applicant's aforesaid injury arose 'in the course of' his employment."

\* \* \* \* \* \*

As we have already indicated, the mere fact that the accident occurred on the premises of the employer during working hours does not make it compensable. Sacks v. Industrial Commission, 13 Ariz. App. 83, 474 P.2d 442 (1970); City of Phoenix v. Industrial Commission, 104 Ariz. 120, 449 P.2d 291 (1969). Consequently, it is mandatory that Toler also demonstrate that his injuries resulted from an accident which arose out of his employment before he is entitled to compensation. The hearing officer held that Toler failed to sustain his burden of proof on this element.

█ The facts before us present another aspect of the assault issue. In its essence it poses the question of whether an unprovoked assault by an inebriated employee upon a coemployee is compensable as "arising out of" the employment. We believe that it is.

Our Supreme Court has said that where an assault is involved the causal connection with the employment may be shown by connecting the subject matter of the dispute leading to the assault with the employment. Peter Kiewit Sons' Co. v. Industrial Commission, supra. The subject matter of the dispute between Toler and DeJarnette was whether or not Toler had stolen a drink from DeJarnette's bottle.

In *Kiewit,* supra, the injured party had been fired and was waiting to collect his final paycheck when he was assaulted by a third party not a co-worker or anyone else in the employ of Kiewit. In holding the injury compensable, the court made this salient observation:

"The significant point is that an assault, even one based on a dispute arising out of and in the course of employment, is rarely required or justified by the existence of their employment relationship alone, but is motivated by personal feelings of anger, dissatisfaction, insecurity, revenge or bias." Peter Kiewit Sons' Co. v. Industrial Commission, supra, 88 Ariz. at 173, 354 P.2d at 33.

In rejecting the "aggressor rule defense" for Arizona, this court, in Colvert v. Industrial Commission, 21 Ariz.App. 409, 520 P.2d 322 (1974), laid a further foundation for this opinion. Emphasizing the elimination of concepts of fault and other common law doctrines in the Workmen's Compensation setting, the court cites with approval both Larson's Workmen's

Compensation Law, Volume 1, § 11.16(c), and Crotty v. Driver Harris Co., 49 N.J. Super. 60, 139 A.2d 126 (1958), for this principle:

'. . . [A]ssaults by co-workers are compensable as long as they are not motivated by personal vengeance stemming from contract with the employee outside of the employment." Colvert v. Industrial Commission, supra, 21 Ariz. App. 411, 520 P.2d at 324.

See also Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11 (1940).

*Kiewit* and *Colvert* indicate that Arizona courts recognize that the friction and strain of employment can often precipitate assaults even in the absence of other job-related factors. Nevertheless, our courts have not translated this recognition into an application of a "but-for" or "positional risk" theory making such assaults automatically compensable. Since the issue may be reasonably resolved without unnecessary disruption of our previous interpretations of the Workmen's Compensation Act, we need not adopt such a broad theory in this case.

An attack by an excessively intoxicated employee is analogous to an attack perpetrated by an insane employee. As to assaults by insane coemployees, 1 Larson's Workmen's Compensation Law, page 191, § 11.32(a), sets forth the following rule:

"If claimant is assaulted by a co-employee who becomes irresponsible because of insanity, the great majority of decisions hold that the injury arose out of the employment, and it is immaterial whether or not the employer had knowledge of the assailant's condition or propensities."

See also Pacific Employers Insurance Co. v. Industrial Accident Commission, 139 Cal.App.2d 260, 293 P.2d 502 (1956); Howard v. Harwood's Restaurant Co., 40 N.J.Super. 564, 123 A.2d 815, aff'd, 25 N.J. 72, 135 A.2d 161 (1957).

On page 193, in § 11.32(a), Larson continues:

"This rule has been applied not only to coemployees who have become crazed and run amuck during their employment, but also to coemployees who have become so completely drunk that their condition is comparable to insanity, whether or not the employer had reason to know of the coemployee's tendency to get drunk or of his dangerous proclivities when drunk."

See also In re McNicol, 215 Mass. 497, 102 N.E. 697 (1913); Perez v. Fred Harvey, Inc., 54 N.M. 339, 224 P.2d 524 (1950).

The application of the foregoing rule necessarily requires the conclusion that an assailant is "so completely drunk" that his "condition is comparable to insanity." The hearing officer made no specific finding that DeJarnette was drunk, nor that he had been drinking at all. On the other hand, the unrefuted testimony of Toler and the only eyewitness other than the parties to the altercation, was that except for routine or work-related contact, Toler and DeJarnette had had no personal association prior to the events leading to the assault. They testified that DeJarnette, at the time of the assault, spoke incoherently and with a slur. It seems apparent that no rational person would perpetrate an unprovoked assault with a dangerous weapon on a coemployee he had not known personally before and for a reason unsubstantiated in any of the testimony, unless he was so drunk as to be completely devoid of judgment and reasoning ability. *Larson,* supra.

Under the circumstances of this case we are impelled to conclude that an unprovoked assault by an inebriated coemployee is compensable as it is in the course of and arises out of the employment.

FROEB, Acting P. J., and HAIRE, J., concur.

NOTE: Judge LAURANCE T. WREN having requested that he be relieved from consideration of this matter, Judge HAIRE was called to sit in his stead and participate in the determination of this decision.