166 P.3d 135

PF CHANG'S, Petitioner Employer,

Federal Insurance c/o Gallagher
Bassett, Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Ngok Wan Lau, Respondent Employee.

No. 1 CA–IC 06–0073.

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 6, 2007.

As Corrected Sept. 20, 2007.

Klein, Lundmark, Barberich & LaMont, P.C. By Kirk A. Barberich, Lisa M. LaMont, Phoenix, Attorneys for Petitioners Employer and Carrier.

Laura L. McGrory, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Delaney & Melkonoff, P.C. By Edgar M. Delaney, Phoenix, Attorneys for Respondent Employee.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona (ICA) award for a compensable claim. One issue is presented: whether the administrative law judge (ALJ) erred by finding that the respondent employee (claimant) sustained compensable injuries in an altercation at work with his supervisor. Because we agree with the ALJ's conclusion that claimant's injuries arose out of his employment, we affirm the award.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Claimant, a stir-fry cook for the petitioner employer, PF Chang's, was injured on October 15, 2005, when his supervisor pushed him and he fell. He filed a workers' compensation claim, which was denied by the petitioner carrier, Federal Insurance c/o Galla-

gher Bassett. Claimant timely requested a hearing, and the ICA held one hearing for testimony from the claimant, a coworker, and claimant's supervisor.

¶ 3 Claimant testified that he began work at PF Chang's in August 1993, and that he was the only Chinese employee at this location. In August 2005, he was injured when a coworker holding a hot wok burned him on the right shoulder. Claimant speaks Cantonese Chinese, and he testified that he does not speak English very well.[1] He tried to tell his coworker to "be careful" in the future, but instead, he stated "you remember."

¶ 4 Claimant testified that after this injury, his supervisor, Jerry, mocked him in front of his coworkers, stating "you remember," and mimicking his Chinese accent. He stated that this occurred on a daily basis and eventually his coworkers followed Jerry's example and also began to mimic him and make fun of his accent.

¶ 5 On October 15, 2005, claimant clocked out after his shift and went to the refrigerator on the wok line to get bones that he was taking home to make soup. When a coworker asked him what he was doing, he said, "This bone for soup." Claimant testified that Jerry overheard him and immediately began to mimic his statement. He stated that this made him very angry, so he walked up to Jerry and told him off. Claimant testified that Jerry responded by telling claimant that he was going to fire him. Jerry then used both hands to grasp claimant by the shoulders and push him causing him to fall down and injure his shoulder and pelvis.

¶ 6 The following day, claimant reported his injury to PF Chang's and saw a doctor. He testified that he became angry with Jerry as a result of having been constantly harassed and belittled in front of his coworkers over the two-month period. Claimant stated that he did not report Jerry's harassment because of his poor English and the absence of other Chinese employees.[2]

¶ 7 Nicholas G., a server and bartender at PF Chang's, testified that he had worked with both claimant and Jerry, and he had never witnessed any difficulties between the two before October 15, 2005. He stated that PF Chang's was a fun place to work and that everyone seemed to get along well. Nicholas testified that he did not often socialize with claimant or Jerry, because he worked in the front of the restaurant, while both of them worked in back, in the kitchen.

¶ 8 Nicholas testified that on the date in question, he heard laughing on the cooking line and looked back into the kitchen to see what was happening. He stated that he saw claimant loudly cussing at Jerry, and Jerry trying to get him to calm down. Nicholas also testified that he saw claimant throw a metal soup container at Jerry and chase him with a ladle. He stated that Jerry then pushed claimant away, and claimant fell.

¶ 9 Jerry O., a sous chef at PF Chang's, testified that he was claimant's immediate supervisor. He stated that they got along well and never had any problems until October 15, 2005. Jerry stated that his workshift overlapped with the claimant's by three to four hours each day. He remembered the August 2005 incident, when another wok cook burned claimant's arm. However, Jerry unequivocally denied making fun of claimant following that incident.

¶ 10 With regard to the October 15, 2005 incident, Jerry was present when claimant retrieved the bones from the refrigerator. He stated that all he said to claimant was, "See you later." Jerry testified that without any warning, claimant turned on him and began screaming profanities and making obscene hand gestures. He stated that he tried to get claimant to calm down, but when he could not do so, he fired claimant and told him to leave the building.

¶ 11 Jerry testified that claimant then began to get physical, so he pushed him away and claimant fell down. Jerry stated that claimant immediately got back up and threw three one-gallon stainless steel soup tureens at him, before striking him with a stainless steel soup ladle. At that point, Jerry called a

1. Claimant had to have an interpreter for the ICA hearing.

2. Claimant clarified that PF Chang's brought in an Asian chef for one day, in early October 2005, and that he did mention this harassment to him.

manager and had claimant escorted out of the restaurant. Jerry stated that he had no idea why claimant attacked him, and he denied that he ever made fun of claimant or heard anyone else do so at PF Chang's.

¶ 12 Following the close of the hearing, claimant filed a post-hearing memorandum. The ALJ then entered an award for a compensable claim. She reasoned:

> Both counsel have cited cases to me in support of their positions and I have considered other case law also. I find Applicant's citation to the Larson treatise to be appropriate under the circumstances of this case.[3] I also accept the reasoning in *Colvert v. Indus. Comm'n*, 21 Ariz.App. 409, 520 P.2d 322 (1974) which reasoning was also used in [sic] to find a compensable claim in *Burnett v. Indus. Comm'n*, 158 Ariz. 548, 764 P.2d 33 (App.1988). I find the testimony of Jerry and Nick both establish that there was some teasing and laughter which they probably found to be inoffensive. I also believe that Jerry thought the joking and looseness and playing around was all in fun and caused no harm. I believe Applicant felt he was being harassed by the other workers and by his supervisor Jerry when he was teased about his English and about taking the soup bones home. I accept his statements in this regard as credible. Songwriter Paul Simon stated "one man's ceiling is another man's floor." It all comes down to perception. I believe it more likely that Applicant felt that the playing around and joking was not good-hearted teasing or simply workplace fun. I find there is sufficient work related activity to bring Applicant's response to what he believed to be harassment regarding his activities of taking home soup bones, acknowledged by all to be an approved activity by the employer, and his limited ability to converse with co-workers in English about work related activities to be within the course and scope of his employment.

The ALJ summarily affirmed her award on administrative review, and PF Chang's brought this special action. This court has

jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–120.21(A) (2003), 23–951(A) (1995), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

### A. Standard of Review

¶ 13 We defer to the ALJ's factual findings, *Young v. Industrial Commission*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App.2003), and we consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App.2002). We independently review legal conclusions, such as whether a claimant's injury arose out of and in the course of his employment. *See, e.g., Finnegan v. Indus. Comm'n*, 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988).

### B. Claimant's Injury

¶ 14 To be compensable, an injury must both arise out of and be sustained in the course of employment. A.R.S. § 23–1021(A) (2005). "Arising out of" refers to the origin or cause of the injury, while "in the course of" refers to the time, place, and circumstances of the injury in relation to the employment. *See, e.g., Peter Kiewit Sons' Co. v. Indus. Comm'n*, 88 Ariz. 164, 168, 354 P.2d 28, 30 (1960); *Scheller v. Indus. Comm'n*, 134 Ariz. 418, 420, 656 P.2d 1279, 1281 (App.1982).

¶ 15 In order to arise out of the employment, the injury must result from some risk of the employment or be incidental to the discharge of the duties thereof. *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970). The nature of the risk has been categorized based on the work contribution involved as:

(1) The peculiar risk doctrine—the source of the injury is peculiar to the occupation;

(2) The increased risk doctrine—the employment quantitatively increases the chance of injury;

---

**3.** *See, e.g., Hester v. Indus. Comm'n*, 178 Ariz. 587, 589–90, 875 P.2d 820, 822–23 (App. 1993)(ALJ may incorporate by reference a party's legal memorandum).

348

(3) The actual risk doctrine—the employment subjects the employee to the risk of this injury; or

(4) The positional risk doctrine—the injury would not have occurred but for the fact that the employment placed the employee in a position where he was injured.

*Martinez v. Indus. Comm'n*, 192 Ariz. 176, 180, ¶ 18, 962 P.2d 903, 907 (1998)(citing 1 A. Larson, *The Law of Workers' Compensation* § 6 (1998) ).[4]

¶ 16 In addition to evaluating the nature of the risk, it also is necessary to consider whether the origin of the risk is:

(1) Distinctly work related, such as machinery malfunctioning or dynamite exploding;

(2) Wholly personal, such as a heart attack entirely attributable to a preexisting heart condition or a death from natural causes;

(3) Mixed, i.e., partially work related and partially personal; or

(4) Neutral, such as being hit by a stray bullet or struck by lightning.

*See Royall*, 106 Ariz. at 350, 476 P.2d at 160; 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* (Larson) §§ 4.01–.04, at 4–1 to –4 (2007).

¶ 17 On review, PF Chang's argues that the claimant's injury did not arise out of his employment because the motivating cause of the assault, which led to the injuries, was purely personal. The claimant responds that the ALJ correctly applied the friction and strain rule or the positional risk doctrine to find that his injuries arose out of the employment. *See* Larson, *supra*, § 8.01[6][a]—[c], at 8–36 to –42.

¶ 18 Assault-related injuries are compensable, when the altercation arises out of a work-related dispute. *See, e.g., Colvert v. Indus. Comm'n*, 21 Ariz.App. 409, 410–11, 520 P.2d 322, 323–24 (1974).

[I]t is universally agreed that if the assault grew out of an argument over the perform-

ance of the work, the possession of the tools or equipment used in the work, delivery of a paycheck, quitting work, trying to act as a peacemaker between quarreling employees, and the like, the assault is compensable.

*Id.* at 410, 520 P.2d at 323 (citation omitted). This is true regardless of who was the aggressor, because workers' compensation is a no-fault system. *Id.* at 411, 520 P.2d at 324.

¶ 19 In their workers' compensation treatise, Professors Larson note that the "friction and strain rule" is an extension of the recognized compensability of work-related assaults. "[E]ven if the subject of the dispute is unrelated to the work, the assault is compensable if 'the work of the participants brought them together and created the relations and conditions which resulted in the clash.' " Larson, *supra*, § 8.01[6][a], at 8–37 (quoting *Hartford Accident & Indem. Co. v. Cardillo*, 112 F.2d 11, 18 (D.C.Cir.1940)).

¶ 20 In *Hartford*, the claimant worked in a produce warehouse. *Id.* at 13. His immediate supervisor repeatedly taunted him about his stature, calling him "Shorty." *Id.* This went on for some time until the claimant finally called his supervisor a vile name. *Id.* The supervisor responded by assaulting the claimant and fracturing his jaw. *Id.* In upholding the commissioner's finding that the claimant's injury was compensable, the federal court held:

It follows that the judgment must be affirmed. Taking full account not only of the findings but of all the evidence, it is clear that the entire sequence of incidents occurred not only while the claimant and his assailant were at work, but as a natural and normal product of working together. The record shows no private or personal relations between them. . . . All this may be said also concerning the use of the respective appellations of 'Shorty' and 'Skinny,' both in the banter and in the official acts of giving and receiving orders. The claimant may have been at fault in resenting his superior's ridicule, expressed perhaps as much in tone as in language, by

4. The current treatise citation is 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensa-* *tion Law* §§ 3.01–.05, at 3–1 to –6.1 (2007).

repeated use of the diminutive nickname, both personally and officially. His remonstrance should have ended the practice. When it did not, the fighting word sprang to the lips, and the superior employee responded with his fist.... The entire sequence of events arose out of the fact that the work of the participants brought them together and created the relations and conditions which resulted in the clash. Nothing in the record shows that [claimant] was intoxicated or had any intention to injure himself or another. He was guilty at most of contributory fault. But it was not sufficient, within either the statutory language or the principle of our previous decisions, to constitute a departure from the work, a matter purely personal, or a disconnecting intervening agency.

*Hartford,* 112 F.2d at 17–18.

¶ 21 Although no Arizona case has yet applied the friction and strain rule to a work-related assault, it has been discussed. *See Arizona Workers' Compensation Handbook* § 3.3.6, at 3–17 to –18 (Ray J. Davis et al. eds., 1992 & Supp.2006). In *Toler v. Industrial Commission,* 22 Ariz.App. 365, 527 P.2d 767 (1974), the claimant was assaulted by an inebriated coworker, who accused claimant of stealing a drink from his liquor bottle. In setting aside an ICA award of noncompensability, this court recognized:

> *Kiewit* and *Colvert* indicate that Arizona courts recognize that the friction and strain of employment can often precipitate assaults even in the absence of other job-related factors. Nevertheless, our courts have not translated this recognition into an application of a "but-for" or "positional risk" theory making such assaults automatically compensable. Since the issue may be reasonably resolved without unnecessary disruption of our previous interpretations of the Workmen's Compensation Act, we need not adopt such a broad theory in this case.

*Toler,* 22 Ariz.App. at 368, 527 P.2d at 770. The *Toler* court then found that the claimant's injuries arose out of his employment and were compensable, by likening his assault "to an attack perpetrated by an insane employee." *Id.*

 ¶ 22 In this case, the ALJ found that claimant thought he was being harassed by his supervisor and coworkers. This behavior continually occurred over a two-month period, and claimant felt that he had no recourse. As was true of the co-employee in *Toler,* there is no indication in the record that claimant and his supervisor had any acquaintance outside of the workplace. Because we find the facts in this case analogous to those in *Hartford* and the legal analysis there persuasive, we affirm the ALJ's award applying the friction and strain rule to find that claimant's injuries arose out of his employment.

### CONCLUSION

¶ 23 For the foregoing reasons, we affirm the ALJ's award for a compensable claim.

CONCURRING: PATRICK IRVINE, Judge and G. MURRAY SNOW, Judge.

