IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| KELLY J. LANE, | ) | |
| | ) | |
| Petitioner Employee, | ) | |
| | ) | |
| v. | ) | 2 CA-IC 2007-0007 |
| | ) | DEPARTMENT B |
| THE INDUSTRIAL COMMISSION OF | ) | |
| ARIZONA, | ) | O P I N I O N |
| | ) | |
| Respondent, | ) | |
| | ) | |
| CITY OF TUCSON, | ) | |
| | ) | |
| Respondent Employer, | ) | |
| | ) | |
| CITY OF TUCSON, | ) | |
| | ) | |
| Respondent Insurer. | ) | |
| | ) | |

SPECIAL ACTION - INDUSTRIAL COMMISSION

ICA Claim No. 20063-170114

Insurer No. WCTUC2006514468

Thomas A. Ireson, Administrative Law Judge

AWARD SET ASIDE

Brian Clymer

Tucson
Attorney for Petitioner Employee

The Industrial Commission of Arizona
  By Laura L. McGrory

Phoenix
Attorneys for Respondent

Frank W. Frey

Tucson
Attorney for Respondents
Employer and Insurer

E C K E R S T R O M, Presiding Judge.

¶1      In this statutory special action, petitioner Kelly Lane challenges the administrative law judge's (ALJ) ruling that Lane's claim for workers' compensation benefits was noncompensable because his injury from a gunshot wound did not arise out of and occur in the course of his employment as a police officer.  For the following reasons, we set aside the award.

¶2      The following facts are essentially undisputed.  After his claim for workers' compensation benefits was denied by the City, Lane requested a hearing before an ALJ.  At the hearing, Lane, an officer for the Tucson Police Department (TPD), testified he had been riding his mountain bike while off duty at night in rural Pinal County with two friends, Randy R. and Keith L.  After the ride, they were standing near their two vehicles, which were parked about four or five hundred feet from the main road.  At that time, Lane and Keith heard gunshots in the distance about a mile away, an event Lane considered unusual because it was nighttime.  At Lane's suggestion, they decided to pack up and leave the area.

¶3      As they did so, a car approached from the same direction as the shots and then abruptly stopped. Its lights illuminated the area, and Lane heard a voice say, "We got her five times." The occupants of the car then began firing bullets in their direction, and Lane dove for cover behind the engine compartment of his vehicle.

¶4      Lane testified that while hiding, he had begun to make a plan of action to apprehend the suspects and investigate a possible homicide. But he soon realized his friend Randy was not protected, and his "priorities changed from trying to capture these guys and have them identified, to going back and making things safe for [his] friends and [him]self." Lane tried yelling out to Randy but he "looked to be kind of frozen in space, he wasn't reacting." Lane then ran over to Randy and was about to place his hand on Randy's right shoulder in order to get him behind the vehicle when Lane was shot in the back. He later maintained that, when he left the position of safety behind his vehicle to assist Randy, he did so in part based on his police training and in part because "[he] would do that for a friend, even if [he] wasn't a cop."

¶5      Keith testified he had taken cover behind the front of Randy's vehicle when bullets began coming in his direction. He did not "know for sure if [he was] protected in that location," and he was not certain of the direction from which the bullets were coming. He saw Lane running toward him and then "roll up against Randy's vehicle."

¶6      Lane later wrote a report to his supervisors about the incident. In that report he stated that, after he had been shot, he had lost consciousness. He awoke while his friends were loading him into his vehicle. While en route to meet paramedics, Lane and his friends

passed what they believed was the car whose passengers had shot at them. Lane told Keith to memorize the license plate number and a description of the vehicle, which Keith apparently reported to the sheriff's department. Lane was transported by helicopter to the hospital for emergency surgery. As part of his recovery, he underwent several more surgeries and spent thirty days in the intensive care unit of the hospital.

¶7 Captain David Neri of TPD was Lane's supervisor at the time Lane was injured and also testified at the hearing. Neri investigated the incident and determined that the individuals in the car had been shooting randomly and had no intention to shoot Lane at all nor target him because of his employment. However, Neri also concluded Lane had been "acting as a law enforcement officer at the time of the shooting."

¶8 After the hearing, the ALJ issued an award finding Lane's claim noncompensable because he had not been acting as a peace officer at the time he was injured and therefore implicitly concluding his injury did not "aris[e] out of and in the course of his employment" as required by A.R.S. § 23-1021(A) to be compensable. The ALJ affirmed his decision upon review, and this statutory special action followed.

¶9 When reviewing an industrial commission award, "[w]e defer to the ALJ's factual findings, and we consider the evidence in the light most favorable to upholding the award." *PF Chang's v. Indus. Comm'n*, 216 Ariz. 344, ¶ 13, 166 P.3d 135, 138 (App. 2007) (citations omitted). However, we independently review legal conclusions, such as the issue raised here: did Lane's injury arise out of and in the course of his employment and is it, therefore, compensable. *Id.* The "arising out of" element "refers to the origin or cause

4

of the injury"; the "in the course of" element refers to "the time, place, and circumstances of the accident in relation to the employment." *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970). Although we must analyze the elements separately, "in determining whether the necessary degree or quantum of 'work-connection' is established to bring the claimant under the coverage of the Act, it is also necessary to consider them together." *Id.* at 350, 476 P.2d at 160. We are also mindful that we must interpret "the Workers' Compensation Act liberally in order to effectuate its remedial purpose." *Schuck & Sons Constr. v. Indus. Comm'n*, 213 Ariz. 74, ¶ 13, 138 P.3d 1201, 1204 (App. 2006); *see also McCloud v. Ariz. Dep't of Pub. Safety*, 217 Ariz. 82, ¶ 32, 170 P.3d 691, 701 (App. 2007) (acknowledging duty to construe workers' compensation statutes liberally).

## ARISING OUT OF EMPLOYMENT

¶10        In order for an injury to be considered arising out of employment, "the injury must result from some risk of the employment or be incidental to the discharge of the duties thereof." *PF Chang's*, 216 Ariz. 344, ¶ 15, 166 P.3d at 138. Lane argues his injury arose out of his employment because "his work as a law enforcement officer increased the risk that he would be injured while responding to criminal activity, such as a shooting."

¶11        In evaluating employment-related risks, we consider both the nature and origin of the risk. *Id.* ¶ 16. Four different types of employment-related risks can establish that the nature of the risk justifies compensation: those particular to the employment (peculiar risk); those to which the employment causes an increased exposure even if not particular to the employment (increased risk); those that are actual risks of the employment

(actual risk); and those that would not occur "but for the fact the employment placed the employee in a position where he or she was injured," (positional risk). *Nowlin v. Indus. Comm'n*, 167 Ariz. 291, 293, 806 P.2d 880, 882 (App. 1990); *accord Martinez v. Indus. Comm'n*, 192 Ariz. 176, ¶ 18, 962 P.2d 903, 907 (1998).

¶12       In separately assessing the origin of the risk, we must determine whether it is "[d]istinctly work related, . . . [w]holly personal, . . . [m]ixed, . . . [or n]eutral." *PF Chang's*, 216 Ariz. 344, ¶ 16, 166 P.3d at 139.   A neutral risk is one that originates from a source that is "neither distinctly personal to [the] claimant nor associated with the employment," *Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 96, 796 P.2d 893, 898 (1990), whereas with a mixed risk, "personal causes and work combine to produce the harm." *Nowlin*, 167 Ariz. at 294, 806 P.2d at 883.

¶13       Here, the ALJ found that, because the shooter neither had targeted Lane because he was a police officer nor because of any reason personal to Lane, the origin of the shooting was neutral.   The ALJ's reasoning is somewhat less clear as to the nature of the risk.   But his findings suggest that the nature of the harm was not employment related because (1) Lane conceded that he may have tried to help his friends regardless of whether his responsibilities as an off-duty police officer would have required it and (2) his exposure of himself by running toward his friends did not involve wise police judgment and therefore could not be attributed to his employment role.   Presumably, the ALJ thus concluded that neither the origin nor the nature of the risk supported the conclusion that the injury arose out of some risk related to Lane's employment as a police officer.

6

¶14 In our view, those findings overlook that, under well-established law, Lane suffered both an increased risk and, arguably, a peculiar risk arising out of his employment under the specific circumstances of the case. Although Lane was off duty, the relevant code of conduct for his employment required him to "act in an official capacity if [he] observe[d] an incident requiring police action . . . [to] safeguard life, property, or prevent the escape of a felon or violent criminal."[1] Because of that duty, Lane was exposed to an increased risk of being injured by gunfire if a crime or other threat to life occurred in his presence than would be faced by a similarly situated non-officer.[2] *See* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* (Larson) § 8.01[1][a], at 8-3 (2007) (employment as police officer creates special risk of assault); *Jordan v. St. Louis County Police Dep't*,

---

[1]TPD General Order 1330.25(C) provides:

> Standards for police action while off duty. Off duty officers shall act in an official capacity if they observe an incident requiring police action when time is of the essence, or if such action will safeguard life, property, or prevent the escape of a felon or violent criminal. If off duty officers observe, or have their attention called to, an incident requiring police action not meeting this standard, they shall report the incident to the appropriate law enforcement agency as soon as practical.

And, TPD General Order 1112 gives "[s]worn members" of TPD the authority to act as peace officers throughout the State of Arizona.

[2]The City contends Lane's injury could not have arisen out of his employment when the shooting was not directed at him because he is a police officer, relying on A.R.S. § 23-901(13)(b). But that provision simply defines one way an injury can be "arising out of and in the course of employment" and, thus, does not preclude our finding Lane's injury compensable under § 23-901(13)(a). *See id.* ("personal injury by accident" can be "arising out of and in the course of employment").

7

699 S.W.2d 124, 127 (Mo. Ct. App. 1985) (off-duty police officer's death "during commission of a felony" was "natural and rational consequence of a hazard or risk inherent in his employment"); *Luketic v. Univ. Circle, Inc.*, 730 N.E.2d 1006, 1011 (Ohio Ct. App. 1999) (duty to protect the public constitutes "special hazard" to off-duty officer, "which is distinctive in nature and quantitatively greater than the risk common to the public"). And, in other employment contexts, this court has held that an injury met the "arising out of" element when the employee, because of the employment, faced an increased exposure to the type of risk that ultimately caused his or her injury. *See S.E. Rykoff & Co. v. Indus. Comm'n*, 172 Ariz. 22, 25-26, 833 P.2d 39, 42-43 (App. 1992) (risk of car theft wholly personal but increased by employment; injury incurred while employee tried to stop theft compensable); *Special Fund of Indus. Comm'n v. Catalina Trucking Co.*, 134 Ariz. 585, 589, 658 P.2d 238, 242 (App. 1982) (truck driver faced increased exposure to street risks as part of employment duties; thus, injury from assault during robbery at self-service truck stop arose out of employment).[3]

¶15        Although the ALJ placed considerable weight on Lane's laudable statement that, wholly apart from his duty as an officer, he would have been motivated to help his friends in any event, nothing about such an independent motivation extinguished Lane's

---

[3]Here, the ALJ partially relied on the shooters' motives in determining Lane was not entitled to benefits. But, we have previously observed that relying on the motives of the assailants to determine whether the assault had arisen out of employment, "improperly disregards possible risks and dangers that may be inherent in and incidental to a[n] . . . employment environment." *Special Fund of Indus. Comm'n v. Catalina Trucking Co.*, 134 Ariz. 585, 588, 658 P.2d 238, 241 (App. 1982).

employment-related duty to help. And, the record fails to support any suggestion that Lane was motivated *exclusively* by a personal desire to help his friends. To the contrary, the ALJ accepted Lane's assertion that he had been following police training and functioning as an officer immediately before he ran toward his friends, and unchallenged portions of the record demonstrate that Lane directed efforts to apprehend the shooters even after he had been injured. Moreover, the City has not directed us to any language in § 23-1021(A) or any other relevant provision that such mixed motivations would render an injury noncompensable. And, as noted above, given that we must apply "workers' compensation laws liberally, remedially, and in a manner ensuring that injured employees receive maximum available benefits," *Aitken v. Industrial Commission*, 183 Ariz. 387, 392, 904 P.2d 456, 461 (1995), we decline to approve such a limit in coverage in the absence of any statutory authority for doing so.

¶16    The circumstances of the case also support a finding that the risk of harm to Lane was distinctly related to his employment status. Indeed, few other fields of employment require the employee, during nonworking hours, to risk his or her own safety to protect others. *See Royall*, 106 Ariz. at 350, 476 P.2d at 160 (source of injury "distinctly associated with the employment" provides strongest causation); *see also* 1 Larson, *supra*, § 4.01, at 4-2 (risks distinctly associated with employment always work connected). And, our supreme court has acknowledged that risks "uniquely associated with a particular

9

employment" support the causation requirement for compensability. *Martinez*, 192 Ariz. 176, ¶ 19, 962 P.2d at 907.[4]

¶17 For those reasons, we conclude, based on relevant jurisprudence and those facts found by the ALJ or otherwise undisputed in the record, that Lane's employment as a police officer caused him to face both an increased and distinctly work-related risk of injury from the gunfire. We therefore hold that Lane's injury arose out of this employment.

## COURSE OF EMPLOYMENT

¶18 For an injury to be compensable, the injury-causing activity must also have occurred "in the course of . . . employment." A.R.S. § 23-1021(A). That factor refers to "the time, place, and circumstances of the accident in relation to the employment." *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970). Specifically, Lane argues he was acting in the course of his employment because he was "acting in an emergency situation in which his employer had an interest." Emergency or rescue activities occur in the course of employment "if the employer has an interest in the rescue" or "the conditions of employment place the claimant in a position which requires the employee by ordinary standards of humanity to undertake the rescue." 2 Larson, *supra*, § 28, at 28-1; *see also Scott v. Rhyan*, 78 Ariz. 80, 84, 275 P.2d 891, 894 (1954) (employment of decedent put him in position of rendering emergency assistance with employer's permission; thus, death

---

[4]This conclusion contradicts the ALJ's assessment that because Lane was hit by a stray bullet, the origin of the risk was neutral. *See PF Chang's v. Indus. Comm'n*, 216 Ariz. 344, ¶ 16, 166 P.3d 135, 139 (App. 2007) (when risk is "[d]istinctly work related," it is not neutral).

10

occurred in course of employment); *Food Prods. Corp. v. Indus. Comm'n*, 129 Ariz. 208, 211, 630 P.2d 31, 34 (App. 1981) (delivery driver's employment caused him to come upon apparent emergency; he acted reasonably by rendering assistance and, therefore, was injured in course of employment); *McCue v. Indus. Comm'n*, 5 Ariz. App. 194, 424 P.2d 842 (1967) (bank security guard instructed to go off premises if necessary to investigate was within course of employment when injured crossing street).

¶19  Here, by specifically requiring its officers to prevent crime and protect life while off duty, TPD has unequivocally expressed an interest in such rescue activities.[5] And, although we are aware of no Arizona case directly addressing whether an off-duty police officer is acting in the course of his or her employment while attempting to prevent crime or assist in an emergency or other rescue,[6] other jurisdictions have so found. *See City of El Dorado v. Sartor*, 729 S.W.2d 430 (Ark. Ct. App. 1987) (off-duty police officer injured while making arrest was acting within course of employment); *Spieler v. Village of Bel-Nor*, 62 S.W.3d 457, 458-59 (Mo. Ct. App. 2001) (affirming award of labor commission to off-duty police officer injured after stopping to render assistance at scene of accident based in part on police procedural manual and in part on principle applicable to workers' compensation that "'a police officer is never off duty'"), *quoting Eubank v. Sayad*, 669

---

[5]Indeed, Lane could presumably be subject to disciplinary action for not following TPD's code of conduct.

[6]*See City of Phoenix v. Indus. Comm'n*, 154 Ariz. 324, 329, 742 P.2d 825, 830 (App. 1987) (affirming award to off-duty police officer killed while intervening in felony robbery where duty to act not in dispute).

11

S.W.2d 566, 568 (Mo. Ct. App. 1984); *Luketic*, 730 N.E.2d at 1108, 1110 (reversing administrative denial of workers' compensation benefits to off-duty police officer injured while attempting to prevent armed robbery when required to do so by public policy and statute).

¶20        The facts, as found by the ALJ, support the conclusion that Lane had been addressing an emergency when he was injured. The ALJ found that Lane heard gunfire a mile in the distance, followed by a vehicle coming from the same direction in which he heard a voice say, "We got her five times," followed by immediate gunfire seemingly directed at him and his friends. Under such circumstances, it was objectively reasonable for Lane to believe he had "observe[d] an incident requiring police action . . . [to] safeguard life, property, or prevent the escape of a felon or violent criminal," as required by TPD. And, contrary to the City's assertion at oral argument, we are hard pressed to imagine a scenario wherein multiple bullets are passing in the near proximity of people and a reasonable person would not believe police action is required.

¶21        In his analysis, the ALJ did not distinguish the two separate elements of compensability. But, he apparently concluded that Lane's injury did not occur in the course of his work-related duties because "he deviated . . . and took action without thinking" when he "reacted to save a friend from a suspected danger."

¶22        Although we accept the ALJ's fact findings, we cannot agree with his legal conclusion that Lane deviated from the course of his employment. First, the specific terms of Lane's job description required him to assist others—the very action he was taking when

12

injured. *See* TPD General Order 1330.25(C) ("Off duty officers *shall* act in an official capacity if they observe an incident requiring police action . . . if such action will safeguard life . . . .") (emphasis added). And, as discussed above, we decline to hold that when an employee is injured under such circumstances, that injury becomes noncompensable merely because the worker may have taken the same action in the absence of the employment-related duty.

¶23　　　　Second, the ALJ suggested that, because Lane acted without any significant deliberation in running toward his friends—and because that action was arguably impulsive and unwise in hindsight—it did not occur in the course of employment.[7] But qualified employees are entitled to benefits for work-related injuries regardless of fault and regardless of whether their own negligent acts contributed to the injury. *See Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, ¶ 11, 174 P.3d 270, 273 (2008) (workers' compensation system "specifically designed to remove any concept of fault from the question of compensability of an injury"); *see also* 2 Larson, *supra*, § 28.01[3], at 28-8 (if employee acts in good faith, his "judgment about the existence of an emergency and how to meet it should not be too severely judged in retrospect").

¶24　　　　We therefore conclude the ALJ erred when he suggested Lane's arguably impulsive and unwise actions constituted a deviation from his employment duties. And, given that the ALJ essentially found Lane was acting in the course of his employment until

---

[7]We also find little support in the factual record for the ALJ's apparent conclusion that Lane's effort to assist his friends fell below the appropriate standard of care for an officer.

the moment he ran to assist his friends, we can find no facts in the record supporting the additional finding that he intended to abandon his employment responsibilities when he did so. *Cf.* 2 Larson, *supra*, § 21, at 21-1 (once worker within time and space limits of employment, departure for acts of "personal comfort" do not take employee out of course of employment unless extent of departure so great as to show an intent to abandon job). To the contrary, his employment responsibilities specifically required him to take precisely that type of action.

¶25 Because Lane has established that his injury had the requisite "quantum of 'work-connection'" to satisfy both the arising out of and in the course of employment elements of the test for determining compensability, *Royall*, 106 Ariz. at 350, 476 P.2d at 160, we set aside the award.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Judge


_____
GARYE L. VÁSQUEZ, Judge

14