# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-019

Filing Date: August 19, 2013

Docket No. 28,508

CHERYL SCHULTZ on behalf of
KEVIN SCHULTZ (deceased),

      Worker-Appellant,

v.

POJOAQUE TRIBAL POLICE
DEPARTMENT, and NEW MEXICO
MUTUAL CASUALTY COMPANY,

      Employer/Insurer-Appellees.

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Helen L. Stirling, Workers' Compensation Judge

Academy Compensation Clinic, P.C.
George Wright Weeth
Albuquerque, NM

for Appellant

Riley, Shane & Keller, P.A.
Richard J. Shane
Kristin J. Dalton
Albuquerque, NM

for Appellees

## OPINION

**FRY, Judge.**

{1}    In this workers' compensation case, the issue before us is whether Officer Kevin Schultz's accidental death arose out of and within the course of his employment with the Pueblo of Pojoaque Tribal Police Department (Employer). The workers' compensation

judge (WCJ) concluded that Officer Schultz's death did not arise out of and in the course of his employment because he was off-duty, outside his jurisdiction, and on a personal day trip near the Rio Grande at the time of the accident. Because of the unique nature of law enforcement duties, we conclude that law enforcement officers may recover workers' compensation benefits in some instances for off-duty injuries occurring in response to circumstances reasonably calling for police officer assistance. Accordingly, because we also hold that there was a sufficient nexus between Officer Schultz's actions in undertaking the rescue of a drowning child and the duties of his employment as a police officer, we reverse.

**BACKGROUND**

**{2}** The tragic facts of this case are not in dispute. Officer Schultz drowned while saving a twelve-year-old boy who had fallen into the Rio Grande. Officer Schultz responded to the child's cry for help and jumped into the swift-moving water to rescue him. While Officer Schultz was able to get the child to safety, he did so at the peril of his own life and suffered an unknown injury in the course of the rescue that rendered him unable to save both himself and the child.

**{3}** On the day of the rescue, Officer Schultz was off-duty and voluntarily chaperoning a church youth group trip to a recreational area on the Rio Grande near Pilar, New Mexico. There were four adult chaperones on the trip, including Officer Schultz and his wife, Cheryl. The child Officer Schultz rescued was one of the children under their supervision. Officer Schultz was not "on-call" that day, nor was he in uniform, although his badge and department-issued pager and firearm were found on his body. The incident also took place outside the boundaries of the Pueblo of Pojoaque reservation. Nevertheless, whether Officer Schultz believed his duty to rescue the child arose from his responsibilities as a police officer, a chaperone, or some measure of both, the parties agree that Officer Schultz died a hero.

**{4}** Consistent with public expectations that police officers may be required to act in their official capacity while off-duty, Officer Schultz's sacrifice was honored at both the national and local levels. Officer Schultz is recognized on the National Law Enforcement Officers Memorial and the State of New Mexico Law Enforcement Memorial, both of which require for inclusion a finding that the officer died in the line of duty. Cheryl and the couple's son were also awarded survivor benefits under the Public Safety Officers' Benefits Act. *See* 42 U.S.C. § 3796(a) (2006) (providing for survivor benefits where the public safety officer "died as the direct and proximate result of a personal injury sustained in the line of duty"). Indeed, the lieutenant governor of the Pueblo of Pojoaque sent Cheryl a letter recognizing that "[y]our husband, Kevin Schultz, died in the line of duty" and that the "Pueblo of Pojoaque will do anything necessary for you to receive survivor's benefits, [workers'] compensation or any other benefits available to you and your grieving family."

**{5}** Cheryl subsequently filed a workers' compensation claim for medical and survivor benefits against Employer and its insurer, New Mexico Mutual Insurance Company.

2

Following the trial, the WCJ barred recovery by concluding, in part, that Officer Schultz's death did not arise out of and occur in the course of his employment.[1]

**DISCUSSION**

**Standard of Review**

**{6}** Because the material facts in this case are not in dispute, we review de novo. *See Losinski v. Drs. Corcoran, Barkoff, & Stagnone, P.A.*, 1981-NMCA-127, ¶ 4, 97 N.M. 79, 636 P.2d 898 ("Where [the] facts are not in dispute, it is a question of law whether an accident arises out of and in the course of employment."). In reviewing this issue, we are mindful that the Workers' Compensation Act (WCA) represents a "delicate balance between the rights and interests of the worker and the employer." *Gonzalez v. Performance Painting, Inc.*, 2013-NMSC-021, ¶ 9, ___ P.3d ___. Thus, "any judicial analysis under the [WCA] must balance equally the interests of the worker and the employer without showing bias or favoritism." *Id.* (alteration in original) (internal quotation marks and citation omitted).

**{7}** Given the unique nature of law enforcement duties, including the fact that in some circumstances an off-duty police officer may be required to respond in an official capacity to incidents arising in the officer's presence, courts have struggled with determining the compensability of off-duty police officer injuries using traditional interpretations of the "arising out of and in the course of employment" test. Below, we discuss the traditional analysis, the unique risks faced by police officers both on- and off-duty, application of the traditional "arising out of and in the course of employment" test to off-duty police officer injuries, and why the traditional analysis is an inadequate benchmark for determining the compensability of off-duty police officer injuries. We conclude by formulating the proper inquiry for injuries to off-duty police officers responding to incidents reasonably calling for police assistance and hold that Officer Schultz's death arose out of and in the course of his employment.

**The Historical "Arising Out of and in the Course of Employment" Test in New Mexico**

**{8}** "For an injury to be compensable it must be caused by an accident 'arising out of and in the course of employment.' " *Velkovitz v. Penasco Indep. Sch. Dist.*, 1981-NMSC-075, ¶ 2, 96 N.M. 577, 633 P.2d 685 (quoting NMSA 1978, Section 52-1-9 (1973)). "Arising out of" and "in the course of employment" are two distinct requirements. *Hernandez v. Home Educ. Livelihood Program, Inc.*, 1982-NMCA-079, ¶ 9, 98 N.M. 125, 645 P.2d 1381. The

---

[1]The WCJ also concluded that Cheryl's claim was barred by the statute of limitations. Discussion of the procedural issues related to Cheryl's complaint and initial appeal can be found in our Supreme Court's prior decisions in this case. *See Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2010-NMSC-034, 148 N.M. 692, 242 P.3d 259; *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2013-NMSC-013, __ P.3d __.

"arising out of" prong relates to the cause of the accident. *Id.*; *see Velkovitz*, 1981-NMSC-075, ¶ 2 ("For an injury to arise out of employment, the injury must have been caused by a risk to which the injured person was subjected in his employment."); *Kloer v. Municipality of Las Vegas*, 1987-NMCA-140, ¶ 3, 106 N.M. 594, 746 P.2d 1126 ("The term 'arising out of' the employment denotes a risk reasonably incident to claimant's work."). Typically, accidents satisfying this prong will include those occurring during acts the employer has instructed the employee to perform, acts incidental to the worker's assigned duties, or acts that the worker had a common law or statutory duty to perform. *Ramirez v. Dawson Prod. Partners, Inc.*, 2000-NMCA-011, ¶ 14, 128 N.M. 601, 995 P.2d 1043. The term "course of employment," on the other hand, "relates to the time, place, and circumstances under which the accident takes place." *Velkovitz*, 1981-NMSC-075, ¶ 2. We have stated before that "an injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Kloer*, 1987-NMCA-140, ¶ 7. In order for a claimant to be awarded compensation, both of the requirements for "arising out of" and "in the course of employment" must co-exist at the time of the injury. *Garcia v. Homestake Mining Co.*, 1992-NMCA-018, ¶ 6, 113 N.M. 508, 828 P.2d 420.

**{9}** New Mexico's use and construction of the "arising out of and in the course of employment" standard in workers' compensation jurisprudence is not novel. *See* 1 Arthur Larson & Lex Larson, *Larson's Workers' Compensation Law* § 3.0, at 3-1, -4 (2012) (referring to the "arising out of and in the course of employment" standard as the "almost-universal coverage formula" with the "arising out of portion construed to refer to causal origin, and the course of employment portion to the time, place, and circumstances of the accident in relation to the employment" (internal quotation marks omitted)). Although the term is used in both workers' compensation and tort cases, the differing policy objectives generally weigh against recognizing an overlap between the two diverging constructions of this single phrase. *See Ovecka v. Burlington N. Santa Fe Ry. Co.*, 2008-NMCA-140, ¶¶ 11-13, 145 N.M. 113, 194 P.3d 728; *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 9, 142 N.M. 583, 168 P.3d 155.

**Off-Duty Police Officers and the "Arising Out of and in the Course of Employment" Standard**

**{10}** A distinctive body of workers' compensation law has arisen surrounding injuries to off-duty police officers. This is because police officers fulfill a unique role in society that coincides with increased responsibilities and a greater sense of duty to their employment than the average citizen. *Luketic v. Univ. Circle, Inc.*, 730 N.E.2d 1006, 1011 (Ohio Ct. App. 1999) (stating that a police officer's duty to protect the public "is distinctive in nature and quantitatively greater than the risk common to the public"). This sense of duty can arise both from official dictates of police officer conduct or from societal expectations that the amount of authority with which we imbue police officers corresponds to our reliance that they at all times effectively fulfill their mission to protect and serve the public. *Jordan v.*

4

*St. Louis Cnty. Police Dep't*, 699 S.W.2d 124, 126 (Mo. Ct. App. 1985) ("In a sense, a police officer is never off-duty."); *see Lane v. Indus. Comm'n of Ariz.*, 178 P.3d 516, 521 (Ariz. Ct. App. 2008) ("[F]ew other fields of employment require the employee, during nonworking hours, to risk his or her own safety to protect others."). Rarely do a police officer's duties begin and end at the time clock. *City of El Dorado v. Sartor*, 729 S.W.2d 430, 432 (Ark. Ct. App. 1987) ("[I]t is the nature of police work that an officer might at any time be called into duty, either by his superiors or by what he observes.").

{11}    Often, however, the nature of law enforcement duties and the varying environments where an officer may be called upon to exercise those duties have created difficulties in applying the traditional "arising out of and in the course of employment" analysis to off-duty activities that result in injury. *See Cooper v. Dayton*, 696 N.E.2d 640, 646, 648 (Ohio Ct. App. 1997) (noting the difficulty in applying the traditional workers' compensation factors, such as "time, place, and circumstances," to an instance where a police officer was moonlighting as a grocery store security guard and was injured attempting to arrest shoplifters). In some cases, the circumstances surrounding the off-duty officer's injury call for the officer to act in a role consistent with a primary responsibility of crime interdiction. For example, in *Luketic*, an off-duty police officer visiting a bank on a personal errand was shot by a bank robber while attempting to prevent a robbery. 730 N.E.2d at 1008. The court held that the officer was entitled to workers' compensation for his injuries, despite the officer being on injury leave and outside his jurisdiction at the time of the incident. *Id.* at 1011; *see City of Phoenix v. Indus. Comm'n of Ariz.*, 742 P.2d 825, 830 (Ariz. Ct. App. 1987) (affirming an award of survivor benefits to the family of an off-duty police officer who was killed while moonlighting as a hotel security guard where the officer was shot while investigating a robbery that occurred at the hotel). In more difficult cases, the off-duty officer's injury arises while rendering assistance to members of the public but not necessarily in ways that implicate police-specific duties. For instance, in *Spieler v. Village of Bel-Nor*, the off-duty police officer was returning from a party with his date when they came upon a car accident outside his jurisdiction. 62 S.W.3d 457, 458 (Mo. Ct. App. 2001). The officer approached the accident to check on the passengers and then used his date's cellular phone to call 911. *Id.* While standing in the street, the officer was struck by a passing car and severely injured. *Id.* The court affirmed the award of workers' compensation benefits. *Id.* at 461; *see Lane*, 178 P.3d at 518-19 (awarding benefits to an off-duty police officer who was shot when, following a mountain bike excursion with his friends, random strangers began firing on the group when the officer was attempting to pull an imperiled friend to safety); *Traveler's Ins. Co. v. Hobbs*, 222 S.W.2d 168, 170-71 (Tex. Civ. App. 1949) (affirming the award of workers' compensation benefits where an off-duty police officer was walking with his wife and was struck by a car on the basis that the officer assumed the role of a police officer prior to being struck by pushing his wife out of the way of the vehicle).

{12}    While these cases present widely different factual scenarios consistent with the myriad of risks faced by police officers on a daily basis, the ultimate determination in most cases is typically rooted in statutes or police department regulations compelling or authorizing the off-duty action, or, at the least, an implicit expectation that police officers

5

will take some action not required of the general public when emergencies arise. *See Lane*, 178 P.3d at 520 (stating that the police department code of conduct requiring officers to act in an official capacity if confronted with an incident "requiring police action . . . [to] safeguard life, property, or prevent the escape of a felon" exposed the officer to "an increased risk of being injured by gunfire if a crime or other threat to life occurred in his presence than would be faced by a similarly situated non-officer" (omission and alteration in original) (footnote and internal quotation marks omitted)); *Spieler*, 62 S.W.3d at 459 ("An officer reading [the provisions of the police manual] would certainly think his superiors would expect him to stop at the scene of an accident, wherever occurring, to determine whether people at the scene needed immediate assistance, and to call for such assistance when necessary."); *Luketic*, 730 N.E.2d at 1011 ("[The a]ppellant had a legal and moral duty, pursuant to statutory authority and his oath as a police officer, to protect the public and attempt to prevent a violent felony. This duty placed [the] appellant in his 'zone of employment' when he was shot while intervening in the armed bank robbery, notwithstanding that [the] appellant was off duty and outside his jurisdictional authority as a police officer."). Courts construing these statutory and regulatory provisions to encompass a police officer's conduct at the time of the injury have concluded either that there was a benefit flowing to the employer from the officer's actions or that the officer's conduct furthered the interests of the employer so as to justify the award of compensation. *See City of El Dorado*, 729 S.W.2d at 432 (concluding that an off-duty officer involved in an altercation with a belligerent man at a bar "was motivated by the public interest, and that the attack upon his person, and the subsequent disturbance of the peace . . . constituted a serious criminal offense or threat to life . . . [and] that the City of El Dorado obtained a benefit from the appellee's actions"); *Municipality of Bethel Park v. Workmen's Comp. Appeal Bd.*, 636 A.2d 1254, 1259-60 (Pa. Commw. Ct. 1994) (holding that an unofficial policy encouraging off-duty officers to investigate criminal activity was sufficient to conclude that the officer was acting "in furtherance of the [e]mployer's interests when he suffered his heart attack" after investigating a potential disturbance near his backyard).

{13}    However, insofar as these cases purport to apply the traditional arising out of and in the course of employment test, they remain largely unpersuasive. Many of the statutory or police department provisions that have been relied upon speak only generally of a police officer's duty to act. *See City of Pittsburgh v. Workmen's Comp. Appeal Bd.*, 529 A.2d 1196, 1197 (Pa. Commw. Ct. 1987) ("All members, although relieved from actual performance of duty, are still held to be on duty at all times and must be prepared to act immediately . . . in all cases needing immediate action coming to their attention." (internal quotation marks and citation omitted)); *see also Lane*, 178 P.3d at 523 ("Off[-]duty officers shall act in an official capacity if they observe an incident requiring police action . . . if such action will safeguard life[.]" (omission in original) (emphasis, internal quotation marks, and citation omitted)). Similarly, the benefit flowing to the police department from an off-duty officer's actions seems an attenuated basis on which to ground compensation where it is members of the public, specifically those receiving the police officer's assistance, who

6

actually benefit from the officer's decision to take action.[2]

**{14}**     While we recognize, in accordance with these cases, that regulations governing off-duty officer conduct can aid in determining the parameters of the compensability of an officer's off-duty injury, especially in circumstances where an officer is instructed *not* to act, we believe that an overly technical or singular focus on such provisions fails to account for the amount of discretion the public expects an off-duty officer to exercise in the face of a potential emergency. The immediacy of action often called for in such circumstances would hardly permit officers the time to consider whether they are obligated to act under their respective police department regulations and, thus, whether the circumstances would entitle them to compensation should they be injured. *See City of Pittsburgh*, 529 A.2d at 1197 ("[W]e would [be] loath to hold that [the] claimant should sit by idly while a fellow officer must fend for himself against a crowd of ruffians because he would go uncompensated if seriously injured because of his entry into a fracas."). Instead, police officers just act. Therefore, placing too much emphasis on often broadly worded regulations to support a finding of an attenuated benefit to the employer in order to fit the officer's actions into traditional workers' compensation jurisprudence, which was developed in accordance with more traditional employment environments, would dampen the reliance our society places on police officers to respond to circumstances in which we expect them to intervene. *See Tighe v. Las Vegas Metro. Police Dep't*, 877 P.2d 1032, 1035 (Nev. 1994) ("[T]he unique nature of law enforcement requires us to distinguish it from other types of traditional employment.").

**{15}**     Instead, what we gather from these cases is an implicit recognition that the traditional interpretations of the "arising out of and in the course of employment" standard are inadequate benchmarks for determining whether an injured off-duty police officer is entitled to compensation. Given the unique nature of law enforcement duties and the various circumstances calling for the exercise of those duties, strict application of the "time, place, and circumstances" factors or attempts to delineate what risks off-duty police officers are likely to face incidental to their employment strains the function these factors have served in our workers' compensation law in other contexts. Therefore, we think it is necessary to reexamine our application of the "arising out of and in the course of employment" standard in the context of off-duty law enforcement officers injured while responding to circumstances that reasonably call for immediate police assistance.

**Formulation of the Proper Inquiry**

---

[2]We note that in some jurisdictions, a finding of a direct or indirect benefit to the employer or that the employee's actions at the time of the injury furthered the interests of the employer is a prerequisite to compensability. *See, e.g.*, *City of El Dorado*, 729 S.W.2d at 431-32; *Cooper*, 696 N.E.2d at 644.

**{16}**     Traditionally, the "arising out of" prong has looked to the causal connection between the risk giving rise to the injury and the worker's employment responsibilities. *See Velkovitz*, 1981-NMSC-075, ¶ 2. As noted above, construing this prong too narrowly would threaten to introduce unforeseen and potentially inequitable results due to the seriousness of the risks both on- and off-duty police officers encounter on a routine basis. However, given the small distinction between society's expectations of an on- and off-duty police officer faced with an emergency, the focus under this prong should be the nature of the incident in relation to risks generally faced by on-duty officers in which they would be expected to respond, albeit with due regard for those actions or circumstances in which an off-duty officer has been instructed not to act or intervene. This inquiry would therefore include a determination of the reasonable expectations of an on-duty officer confronted by the same or similar circumstances, regardless of whether an on-duty officer's responsibility to act would arise from statute, police department regulation, or a common sense expectation that the circumstances surrounding the incident necessitated a response.

**{17}**     The "in the course of employment" prong, on the other hand, considers "the time, place, and circumstances under which the accident takes place." *Id.* Similar to the "arising out of" requirement, traditional interpretations of the "in the course of employment" prong are difficult to apply to a type of employment that recognizes little distinction between the responsibilities of its on-duty and off-duty workers. It is therefore nearly impossible to formulate adequate parameters on the time, place, and circumstances factors sufficient to encompass the various occasions, locales, and circumstances where an off-duty officer's injury could take place and still entitle him or her to compensation.

**{18}**     We believe that when determining a police officer's eligibility for injuries sustained in circumstances not traditionally arising from or in the course of predictable employment activities, the proper focus should be on the *circumstances* giving rise to the accident, specifically the nature of the officer's actions and the manner of their performance in relation to a similarly situated on-duty officer. That is not to say that some inquiry into the time and place of the accident is irrelevant. But given that the issue before us concerns an *off-duty* police officer, the "time" factor is of little analytic value insofar as this factor relates to injuries occurring on duty, where we have already concluded that police officers are entitled to recovery for off-duty injuries in some circumstances. *See, e.g.*, *Municipality of Bethel Park*, 636 A.2d at 1255-56, 1259-60 (affirming the award of the compensation benefits where an officer suffered a heart attack after investigating a potential criminal activity during his vacation leave time). Furthermore, consistent with previously cited case law, we decline to place an explicit jurisdictional limitation on an off-duty police officer's entitlement to compensation. *See, e.g.*, *Jordan*, 699 S.W.2d 12; *Luketic*, 730 N.E.2d 1006; *City of Pittsburgh*, 529 A.2d 1196. We note, however, that the more attenuated the officer's law enforcement relationship to the jurisdiction in which the accident arises, the more relevant the place of the accident should become to the workers' compensation judge's conclusion. Nevertheless, the relationship between the circumstances of the incident and the off-duty officer's response in relation to a similarly-situated on-duty officer should remain paramount.

**{19}** In sum, the "arising out of" and "in the course of employment" standard for injuries to off-duty police officers occurring in response to an incident that reasonably called for police assistance constitutes a case-by-case, pragmatic determination of the nexus between the nature of the incident giving rise to the accident and the resulting injury and the person's duties as a public safety officer. Stated generally, determining the connection between the incident and the employment is the goal of any "arising out of and in the course of employment" analysis. *See* 2 Arthur Larson & Lex Larson, *Larson's Workers' Compensation Law* § 29.0 (2012) ("In practice, the 'course of employment' and 'arising out of employment' tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection[.]"). But given the unique expectation placed upon police officers to officially act while off-duty in some circumstances, we must recognize the various, and often serious, risks faced by police officers when fulfilling their broader duty to protect and serve the public. In our view, emergency actions that on-duty police officers would take in the course of their employment that are taken by off-duty police officers can be considered reasonably incidental to their employment responsibilities. Thus, to the extent our conclusion broadens the traditional construction of the arising out of and in the course of employment standard in this unique employment context, it does so in accordance with the "special, unpredictable[,] and emergency situations that are typical of police work[,]" *Pounds v. Board of Trustees of Fire and Police Disability and Retirement Fund*, 749 P.2d 1227, 1229 (Or. Ct. App. 1988), and the recognition that police officers "are often under a continuous duty to protect the public, even when not at work." *Davis v. United States*, 50 Fed. Cl. 192, 201 (2001).

**Officer Schultz's Death Arose Out of and in the Course of His Employment**

**{20}** Turning to the circumstances surrounding Officer Schultz's death, we conclude that there was a sufficient nexus between the incident—the rescue undertaken by Officer Schultz—and his duties as a public safety officer to support an award of compensation.

**{21}** The arising out of prong is satisfied here by the critical nature of the incident. The extent of a police officer's duty to protect and serve the public is not limited to crime prevention. *See Spieler*, 62 S.W.3d at 459-60 ("[T]he interdiction of felonies does not fully define the duty of police officers in providing protection to members of the public who need assistance, wherever they find them."). Rendering assistance to a child in danger of drowning is among those risks to which common sense dictates that an on-duty officer faced with a similar circumstance would be expected to respond. Furthermore, we note that Officer Schultz was not prohibited by Employer regulations from undertaking the rescue in his official capacity. The regulations caution officers against acting outside their jurisdiction but state that an officer can initiate extra-jurisdictional action in "circumstances so serious that immediate action must be taken." No one can seriously dispute that the circumstances giving rise to Officer Schultz's death required immediate action.

**{22}** Employer argues, however, that Officer Schultz's death was not in the course of his employment because he was acting outside the scope of his training in undertaking a swift-

9

water rescue. Under the circumstances in this case, we reject Employer's argument to the extent that it asks this Court to second-guess Officer Schultz's decision to enter the water in order to save the child. There may be some circumstances in which a police officer's response to an emergency would be so incongruent with the expected response of a similarly situated on-duty officer as to remove the officer's actions from his or her "course of employment." This could be evidenced, in part, by deviations from police department regulations, training, or other specific instructions. But Officer Schultz's response does not fall into that category. Employer points us to no regulation that prohibits its police officers from taking action beyond their specific skill set. Rather, the regulations invest officers with discretion in their response to incidents and directs officers to "[a]ct promptly with energy, firmness, and decisiveness at . . . any situation requiring police attention."

**{23}**   It is also apparent that for Officer Schultz to have taken any other action than to attempt to personally rescue the child would have been the equivalent of taking no action at all. Simply stated, notifying the proper authorities, especially dispatching persons with swift-water rescue skills, would likely have resulted in the child's death. Although there was conflicting testimony as to whether Officer Schultz could have been subject to discipline for not taking action that day, we note that the regulations consider "[c]owardice or failure to perform police duties because of danger" a dereliction of duty. Thus, we are confident that Officer Schultz exercised the same degree of discretion and decisiveness as would a similarly situated on-duty officer under the circumstances, despite his lack of swift-water rescue training.

**{24}**   The WCJ focused on three key factors in concluding that Officer Schultz's death did not arise out of and in the course of his employment. The WCJ found it determinative that Officer Schultz had requested the day off and was not on call, that the accident was outside his jurisdiction, and that Officer Schultz was not in an area where his employment required him to be because the purpose of the trip was purely personal. We disagree that these factors preclude compensation in this case.

**{25}**   First, although some courts have utilized an officer's "on-call" status as a basis for awarding compensation, Officer Schultz's status as not "on-call" is not determinative of the issue before us. Society generally expects an off-duty officer to act in circumstances reasonably calling for immediate police assistance when such matters come to his or her attention, unless specifically instructed to refrain from taking the action that led to the injury. *See Stebens v. K-Mart Corp.*, 1983-NMCA-044, ¶ 5, 99 N.M. 720, 663 P.2d 379 ("The fact that a worker, at the time of injury, was disobeying an instruction from his employer may, under some circumstances, deprive him of the right to compensation[.]"); *see also Tighe*, 877 P.2d at 1035 (stating that "police[ officers] may be at any moment 'called' into duty by events taking place in [their] presence, whether or not [they] are technically off duty" (quoting 1 Arthur Larson, *Larson's Workmen's Compensation Law* § 16.17 (1993))). Depending on the circumstances, the officer's responsibility to act may involve the off-duty officer personally intervening or simply taking action to notify the proper authorities. *See Spieler*, 62 S.W.3d at 458 (awarding compensation where an off-duty officer was injured

while notifying the authorities of a car accident). Regardless of the officer's chosen means of intervening, an *off-duty* officer's decision to act in emergency matters coming to his or her attention, as opposed to the officer being dispatched in accordance with "on-call" status, is not ultimately conditioned on whether the officer was expected to be available to the employer for other emergencies and, thus, neither should the officer's ability to recover when the officer is injured in the course of personally initiating such action. Instead, the relevant inquiry when an off-duty officer chooses to respond to such an incident is that stated above—whether there is a nexus between the circumstances surrounding the officer's decision to act and the duties of the officer's employment.

{26}    Second, it is not determinative that the accident occurred outside Officer Schultz's jurisdiction. *See Jordan*, 699 S.W.2d 124; *Luketic*, 730 N.E.2d 1006; *City of Pittsburgh*, 529 A.2d 1196. Employer has not directed us to a case in which this fact has been material to the court's determination. Arguably, whether a police officer is injured while acting outside his or her jurisdiction could be material when the police officer is acting in a law enforcement capacity without authorization to do so. *See Cooper*, 696 N.E.2d at 648 ("[G]iven [the worker's] statutory responsibility as a peace officer to stop crime, his 'place of employment' for law enforcement purposes reasonably could be viewed as anywhere he lawfully exercises his authority."). But that was not the case here. Officer Schultz took action in an emergency to rescue a child in need of immediate assistance and was authorized to do so by Employer's policies permitting off-duty and extra-jurisdictional action in "circumstances so serious that immediate action must be taken."

{27}    Third, Officer Schultz's reason for being at the river and whether he had a personal motivation to undertake the rescue as a chaperone on the trip is similarly immaterial. *See Lane*, 178 P.3d at 521, 523 (noting the officer's testimony that he would have attempted to rescue his friends despite his employment as a police officer and concluding, "[W]e decline to hold that when an employee is injured under such circumstances, that injury becomes noncompensable merely because the worker may have taken the same action in the absence of the employment-related duty"). While we agree with the WCJ that other chaperones may have taken the same action as Officer Schultz, the fact is that it was Officer Schultz who undertook the rescue. It is not dispositive that an off-duty police officer may have both an official and a personal motivation in taking the action that led to the injury. *See id.* at 523.

{28}    The WCJ's conclusion on this point highlights the inadequacy of strictly applying traditional workers' compensation factors to the exceptional duties of police officers. The WCJ stated that being a police officer may "bring with it a higher duty to act in an emergency . . . but that does not convert to one's being at work or in any place where their employer's business requires their presence anytime they take some emergency action." However, rarely will an off-duty officer facing an emergency be simultaneously in a location

11

where "their employer's business requires their presence."[3]  It is the nature of emergencies that they are often unanticipated, and it is the nature of police work to render assistance when and where the need arises.  Strict application of this traditional analysis would thus defeat recovery in nearly every instance, and it would disregard the expectations of police departments and the public that some circumstances will call for an off-duty police officer's response regardless of why the officer is in the best position to provide the assistance.

**{29}**    We therefore hold that Officer Schultz's death arose out of and in the course of his employment as an officer for Employer.  If it is our expectation as a society that police officers put themselves in harm's way, sometimes irrespective of their on-duty status, then it should also be our expectation that such officers be compensated when they are injured in the course of doing so.  *See Davis*, 50 Fed. Cl. at 208 ("The grave physical risks facing public safety officers are imminent whenever an officer is under a duty to take actions to protect the public. . . .  [T]he potential for physical risk pervades their daily lives, both on and off the clock.  Placing officers under such a continuous duty with its inherent risks confers a significant benefit on society.").  We caution, however, that our conclusion should not be construed as holding that all off-duty police officer injuries are compensable.  We agree with the court in *Jordan*, which stated, "In a sense, a police officer is never off-duty. . . .  That does not mean, however, that a police officer is covered by the [w]orker[s' c]ompensation [l]aw at all times regardless of the circumstances of the injury.  There must be a correlation between the injury sustained and the employment."  699 S.W.2d at 126 (citations omitted).  For instance, in appropriate circumstances, the traditional application of our "going-and-coming" rule will be the proper standard for analyzing the compensability of an off-duty officer's injury.  *See* § 52-1-19; *see, e.g.*, *Kunze v. Columbus Police Dep't*, 600 N.E.2d 697, 699-700 (Ohio Ct. App. 1991) (holding that an off-duty police officer is not entitled to police officer exception to the "going-and-coming" rule when they are involved in an accident driving home).  Similarly, our conclusion does not affect this Court's previous holding in *Meeks v. Eddy County Sheriff's Department*, 1994-NMCA-134, ¶ 14, 118 N.M. 643, 884 P.2d 534 (holding that the police officer was not entitled to the workers' compensation benefits "for suffering an injury from self-directed, off-duty athletic activity").  Instead, our holding is limited to emergency circumstances to which an off-duty law enforcement officer responds, providing those circumstances are the kind to which an on-

---

[3]It is unclear whether the WCJ's use of this phrase was intended to reference a separate analysis under NMSA 1978, Section 52-1-19 (1987).  To the extent that it does, we emphasize that the circumstances surrounding Officer Schultz's death did not warrant a "going-and-coming" analysis.  *Ramirez*, 2000-NMCA-011, ¶ 7 (explaining that "workers injured while traveling between home and work are generally not eligible for compensation" (internal quotation marks and citation omitted)).  Furthermore, New Mexico courts have long considered the phrases "while at work" and "in the course of employment" as synonymous, and we have already concluded that Officer Schultz's death occurred in the course of his employment.  *See Whitehurst v. Rainbo Baking Co.*, 1962-NMSC-126, ¶ 20, 70 N.M. 468, 374 P.2d 849; *McKinney v. Dorlac*, 1944-NMSC-017, ¶ 12, 48 N.M. 149, 146 P.2d 867.

duty officer would respond.

**CONCLUSION**

**{30}** For the foregoing reasons, we reverse the WCJ's judgment and remand for proceedings consistent with this Opinion.

**{31}   IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for** *Schultz v. Pojoaque Tribal Police Dep't*, **No. 28,508**

**APPEAL AND ERROR**
Standard of Review

**GOVERNMENT**
Officers

**WORKERS' COMPENSATION**
Course of Employment
Scope of Employment
Workers' Compensation, General