McMURDIE, Judge:
*1116 ¶ 1 This is a special action review of an Industrial Commission of Arizona award and decision upon review for a non-compensable claim. The issues raised by the claimant can be summarized as whether the physical assault that caused Carlos Ibarra's injuries "arose out of" his employment. We hold: (1) an assault is caused by the relations and conditions of the employment (the "friction and strain" of the employment) when the claimant and the other party to the assault have no personal contact outside of the employment, regardless of whether other job-related factors exist; and (2) the passage of time between an original dispute and an assault, known as a "cooling off" period, is not material to the question of whether the assault was work related when parties have no personal relationship outside of employment and all interactions between them occurred at work. We set aside the award and remand for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL BACKGROUND
¶ 2 Ibarra worked for the respondent employer, Arizona Department of Corrections ("ADOC"), as a correctional officer. He was injured during a fight with Jihad Bilal, another correctional officer at the prison. He filed a workers' compensation claim for injuries sustained during the altercation. The claim was denied for benefits by the respondent carrier, State of Arizona, and Ibarra timely requested a hearing.
¶ 3 The ALJ heard testimony from Ibarra, two other correctional officers, and three supervisory officers. Ibarra and Bilal testified they have known each other for at least four years. The men had a history of hostile work-related interactions culminating in a fight on August 11, 2016. They have never socialized, or even spoken to each other, outside of work.
¶ 4 Testimony about six incidents between Ibarra and Bilal was presented. The first incident occurred shortly after Ibarra began working at ADOC's Meadows Unit in 2012, when Bilal refused to assist Ibarra and correctional officer Travis Murty in performing "roll-ups," i.e., preparing inmates for the following day's activities. After that incident, Ibarra asked his supervisor, Sergeant Babeu, not to post him with Bilal.
¶ 5 Sergeant Babeu continued to post Ibarra with Bilal and the second incident occurred in a prison control room. Ibarra testified that Bilal asked him many personal questions about his family: where his mother worked, where his sister worked, lived, and went to school, etc. Officer Murty, who was also present at the control room, testified that Bilal insinuated he wanted to have sexual relations with Ibarra's sister.
¶ 6 The third incident occurred when Ibarra was working in the prison yard. Ibarra asked another officer to bring him a gate key. According to Ibarra, Bilal unilaterally left his assigned post to retrieve the key and verbally abused Ibarra in the process. Ibarra subsequently informed Lieutenant Perron about his difficulties with Bilal. In response, Perron directed Ibarra to speak to his direct supervisor.
¶ 7 The fourth incident occurred in May 2015. While walking down a narrow hallway during a shift change, Ibarra met Bilal and Lieutenant Perron coming from the opposite direction. Ibarra testified that Bilal intentionally bumped into him hard enough to cause him to stumble into the wall. Perron testified he was aware Ibarra and Bilal had a "personal issue," but denied having witnessed this incident.
¶ 8 The fifth incident between Ibarra and Bilal occurred in September 2015 in a briefing room. To address the hostile relationship, Ibarra approached Bilal and inquired what Bilal's problem was with him and if it could be resolved. In response, Bilal became loud and abusive. Although two supervisory officers, Lieutenant McClellan and Sergeant Bolf, were also present, neither supervisor recalled the incident. Also present was Officer Murty; he testified the argument started because Bilal was staring at Ibarra and made negative comments about Ibarra "still living with his mother."
*1117 ¶ 9 The final altercation between Ibarra and Bilal occurred on August 11, 2016. At the end of a shift, an officer comes to an ADOC building's control room and picks up count sheets, which account for all inmates in the building. That night, Bilal came to pick up the count sheets from Ibarra, who was at his post in the control room. Ibarra did not know that Bilal would be picking up the sheets until he opened the control room door and saw Bilal. As he handed Bilal the count sheets, Bilal struck Ibarra in the face and said, "what are you gonna do now bitch?" Ibarra defended himself and a fight ensued. When the fight finally broke up, Bilal radioed for help, and Ibarra was taken to a hospital. There is no dispute that Ibarra was injured during the fight.
¶ 10 Sergeant Bolf testified he responded to Bilal's radio call about the fight. Soon thereafter, he interviewed both officers and each blamed the other for the altercation. Bilal denied any previous hostile interactions occurred between the two men; he also stated he did not initiate the assault, but merely defended himself.
¶ 11 After the hearing, the ALJ determined that the assault was not work related and thus not compensable. Although Ibarra timely requested administrative review, the ALJ supplemented and affirmed the decision. Ibarra then filed this statutory special action. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) and 23-951(A), and Arizona Rule of Procedure for Special Actions 10.
DISCUSSION
¶ 12 We defer to the ALJ's factual findings, Young v. Indus. Comm'n , 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003), because the ALJ is the sole judge of witness credibility, Holding v. Indus. Comm'n , 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984), resolves all conflicts in the evidence, and draws all warranted inferences, see Malinski v. Indus. Comm'n , 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968). However, we review legal conclusions, such as whether the injury arose out of employment, de novo . PF Chang's v. Indus. Comm'n , 216 Ariz. 344, 347, ¶ 13, 166 P.3d 135, 138 (App. 2007).
¶ 13 Ibarra argues the ALJ erred by finding the altercation arose out of personal animosity unrelated to work; he contends his injuries were work-related because the exchange of count sheets brought him together with Bilal on the night of the assault. The ALJ considered each of Ibarra's six enumerated incidents with Bilal and concluded that, except for the initial "roll-ups" incident, each subsequent incident was personal in nature and, thus, not work-related. We disagree with the ALJ's legal conclusion about the classification of the incidents.
¶ 14 To establish a compensable claim, Ibarra had the burden of proving he had sustained an injury by accident "arising out of" and "in the course of" his employment. See A.R.S. § 23-1021. "Arising out of" refers to the origin or cause of the injury, while "in the course of" refers to the time, place, and circumstances of the injury in relation to the employment. See, e.g. , Peter Kiewit Sons' Co. v. Indus. Comm'n , 88 Ariz. 164, 168, 354 P.2d 28 (1960) ; Scheller v. Indus. Comm'n , 134 Ariz. 418, 420, 656 P.2d 1279, 1281 (App. 1982). These tests are interrelated, but each must be evaluated and satisfied separately. Circle K Store No. 1131 v. Indus. Comm'n , 165 Ariz. 91, 94, 796 P.2d 893, 896 (1990). This court has recognized the "arising out of" and "in the course of" tests are not independent, but instead jointly form the "quantum theory of work connection." See Noble v. Indus. Comm'n , 188 Ariz. 48, 50, 52-53, 932 P.2d 804, 806, 808-09 (App. 1996) ; 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 29.01, at 29-2 to -7 (2017); see also Arizona Workers' Compensation Handbook § 3.2.1, at 3-10 (Ray J. Davis, et al., eds.; 1992 and Supp. 2015). The ALJ found, and neither party disputes on appeal, Ibarra was injured "in the course of" his employment.
¶ 15 To arise out of employment, the injury must result from some risk of the employment or be incidental to the discharge of employment duties. Lane v. Indus. Comm'n , 218 Ariz. 44, 47, ¶ 10, 178 P.3d 516, 519 (App. 2008). The employment-related risks have been categorized pursuant to their nature as risks: (1) peculiar to the employment;
*1118 (2) increased by the employment, but qualitatively not peculiar to the employment; (3) actual risks of the employment; or (4) risks that would not occur "but for the fact that the employment placed the employee in a position where he or she was injured" (positional risk). Id. at 48, ¶ 11, 178 P.3d at 520 (quoting Nowlin v. Indus. Comm'n , 167 Ariz. 291, 293, 806 P.2d 880, 882 (App. 1990) ). In addition to evaluating the nature of the risk, it is also necessary to consider whether the origin of the risk is: (1) distinctly work related; (2) wholly personal; (3) mixed, i.e., partially work related and partially personal; or (4) neutral. Id. at ¶ 12 ; PF Chang's , 216 Ariz. at 348, ¶ 16, 166 P.3d at 139. An injury is unlikely to "arise out of employment" when the origin of the risk is wholly personal. See Royall v. Indus. Comm'n , 106 Ariz. 346, 350, 476 P.2d 156, 160 (1970).
¶ 16 Assault-related injuries arise out of employment "when the altercation arises out of a work-related dispute." PF Chang's , 216 Ariz. at 348, ¶ 18, 166 P.3d at 139 (assault-related injuries are compensable "regardless of who was the aggressor, because workers' compensation is a no-fault system."). When the subject of the dispute is unrelated to the work, an "assault is compensable if 'the work of the participants brought them together and created the relations and conditions which resulted in the clash' "-the "friction and strain" of the employment. Id. at ¶ 19 (quoting Larson, Larson's Workers' Compensation Law § 8.01[6][a], at 8-37). An assault is caused by the "friction and strain" of the employment when the parties have no personal contact outside of the employment. Under those circumstances, no other job-related factors beyond the relations and conditions created by the employment need be present. See id. ; Toler v. Indus. Comm'n , 22 Ariz. App. 365, 367-68, 527 P.2d 767 (App. 1974) (an unprovoked assault by an inebriated employee upon a co-employee was compensable as arising out of the employment because "the friction and strain of employment can often precipitate assaults even in the absence of other job-related factors").
¶ 17 The record shows that Ibarra and Bilal had no personal relationship outside of work. They knew each other only through their employment. The men's negative personal feelings towards each other were rooted solely in their employment relationship and arose only from their interactions at work. See PF Chang's , 216 Ariz. at 349, ¶ 22, 166 P.3d at 140 (claimant's injuries from an altercation with a supervisor at work were compensable as arising out of employment when the record did not indicate the parties "had any acquaintance outside of the workplace"); see also Toler , 22 Ariz. App. at 368, 527 P.2d 767 ("except for routine or work-related contact, [the parties] had no personal association prior to the events leading to the assault" and the injuries resulting from an unprovoked assault by an inebriated co-employee were compensable). Ibarra's injuries were, thus, compensable as arising out of employment.
¶ 18 In concluding the attack arose out of personal animosity, the ALJ considered the time between the first incident and the fight. Although the ALJ found the "roll-ups" incident was work related, she found it was "sufficiently remote in time" to classify the fight as non-work related. We disagree.
¶ 19 An assault's compensability does not depend on whether there was a "cooling-off" period between the original dispute and the assault when the parties have no personal contact outside of employment. Instead, the question of compensability hinges on the relation between the employment and the attack. See Peter Kiewit Sons' Co. , 88 Ariz. at 172-73, 354 P.2d 28 ("The fact that, after a work-connected dispute has temporarily ceased, the personal feelings of one of the parties do not 'cool off,' but rather are intensified to cause him to continue the dispute and to commit an assault, should not operate to bar an award of compensation."). In assessing the relationship between the attack and the employment, "[t]he cooling-off period is naturally a circumstance to be considered; but of itself it should not be controlling." Peter Kiewit Sons' Co. , 88 Ariz. at 172, 354 P.2d 28 (quoting Augelli v. Rolans Credit Clothing Store , 33 N.J.Super. 146, 109 A.2d 439, 441 (1954) ). But if all interactions between the parties occurred at work, the passage of time between the original dispute and the assault is of no consequence to the nature *1119 of the interaction. See id. at 171-72, 354 P.2d 28 (the original dispute arose from the claimant's performance of his employment duties, there was no prior relationship between the parties, and no matters outside of employment could have spurred the assault in the period between the original work dispute and the assault); see also PF Chang's , 216 Ariz. at 349, ¶ 22, 166 P.3d at 140 (the claimant was harassed by his supervisor and coworkers over a two-month period, but the parties had no personal relationship outside of the workplace to convert the dispute into a personal one).
¶ 20 Ibarra's original dispute with Bilal arose from Ibarra's performance of his employment duties, the "roll-ups," as the ALJ found. The subsequent incidents, which occurred over several years, all occurred inside ADOC, with the parties having no other contact outside of the workplace. Nonetheless, the ALJ concluded that, "despite a lengthy cooling off period, a ... conflict between the two continued." Under these circumstances, however, the assault's relation to Ibarra's employment controls over the time between the original dispute and the assault. See Peter Kiewit Sons' Co. , 88 Ariz. at 172, 354 P.2d 28.
¶ 21 Based on the ALJ's resolution of the evidentiary conflicts in favor of Ibarra and her findings of fact, we cannot agree with the ALJ's legal conclusion that the assault was personal in nature and consequently did not arise out of Ibarra's employment. See Lane , 218 Ariz. at 48, ¶¶ 11-12, 178 P.3d at 520 ; PF Chang's , 216 Ariz. at 348, ¶ 19, 166 P.3d at 139. On this record, Ibarra satisfied both the "arising out of" and "in the course of" employment elements of the "quantum theory of work connection" test. See Noble , 188 Ariz. at 52-53, 932 P.2d at 808-09.
CONCLUSION
¶ 22 For all the foregoing reasons, we set aside the ALJ's award and remand for further proceedings consistent with this opinion.